STEPHEN BASTABLE, RESPONDENT, *v.* CITY OF SYRACUSE, APPELLANT.

*City — construction of streets — surface water — collection of into one stream.*

Although no action can be maintained for the diversion from its ordinary course of the surface water arising from rains and melting snow, yet if such water be collected into a single channel and cast in a large volume upon the land of an adjacent owner, he may maintain an action to recover the damages sustained thereby.

In pursuance of an ordinance by the common council of the defendant, a street was constructed in the city of Syracuse, whereby the surface water from a large area, which had formerly flowed through no well defined channels over the adjoining low lands, was collected into a single stream and thrown upon the land of the plaintiff. *Held,* that he was entitled to maintain an action to recover the damages sustained thereby.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

This action was brought to recover damages sustained by the plaintiff, by reason of the wrongful diversion of surface water by the defendant in grading certain streets and making other improvements in the city of Syracuse, whereby such water was conducted to and turned upon certain premises of the plaintiff.

*Hiscock, Gifford & Doheny,* for the appellants. Liability for damages cannot result from the exercise of judicial functions, and especially this judicial authority in the case of street commissioners and city authorities has been ruled upon, and so thoroughly fixed in the law of England and of the United States that it would seem there ought to be no question in the present case. (*Wilson* v. *Mayor, etc.,* 1 Den., 595; *Mills* v. *City of Brooklyn,* 32 N. Y., 489;

*Radcliff's Exrs.* v. *Mayor*, 4 id., 195 ; 16 Miss., 255 ; *Kavanaugh* v. *City of Brooklyn*, 38 Barb., 235 ; *Clark* v. *City of Wilmington*, 5 Har., 243 ; *White* v. *Yazoo*, 27 Miss., 357 ; *King* v. *Comr. of Sewers*, 8 Barn. & Cress., 355 ; *Parks* v. *City of Newburyport*, 10 Gray [Mass.], 28 ; *Smith* v. *City of Washington*, 20 How. [U. S.], 135 ; Dillon on Munic. Corp., § 798.) City officers, by virtue of the authority conferred by charter, lay out and grade a system of streets and adjust sewers and gutters as their judgment dictates is best for the general public. The interests of the individual give way to the public good, and whatever injury he receives is *damnum absque injuria*. ( *Wilson* v. *Mayor*, 1 Den., 595 ; *Mills* v. *Brooklyn*, 32 N. Y., 489 ; 16 Miss., 255 ; *Kavanaugh* v. *Brooklyn*, 38 Barb., 234 ; *Govrs., etc.,* v. *Plate Glass Co.*, Term Rep., 794 ; *King* v. *Com. of Sewers*, 8 Barn. & Cress., 355.) As between individuals there is no liability against one who so fills up or grades his own land as to cause surface drainage to run upon his neighbor's land. ( *Goodale* v. *Tuttle*, 29 N. Y., 466, 467 ; *Astley* v. *Walcott*, 11 Cush., 193 ; *Luther* v. *Winnshume Co.*, 9 id., 171 ; 10 Gray, 28 ; 13 id., 601.) The same rule especially applies as between an individual and a city. ( *Dickinson* v. *City of Worcester* [Mass.], 7 Allen, 22 ; *Gray* v. *Maine Cen. R. R.*, 53 Me., 201 ; *Adams* v. *Walker*, 34 Conn., 467 ; *Parks* v. *City of Newburyport*, 10 Gray, 28 ; *Wagner* v. *L. I. R. R. Co.*, 5 N. Y. Sup. Ct. Rep., 164, and reporter's note at the end of the opinion of TALCOTT, J. ; Dillon on Munic. Corp., § 798.)

*Geo. K. Collins,* for the respondent. The defendant was not called upon to provide means for taking charge of this surface water, nor was it liable in damages for results necessarily following from laying out and grading its streets ; yet, having diverted this surface water, and undertaken to carry it away in new channels, or permitted its streets and gutters to accommodate this water in its progress to disburse itself, it was the duty of the defendant, having destroyed the usual channels for such water to run in, to have fully provided for all water that might naturally be expected to be diverted into or flow in its streets and gutters, and to have prevented the same from flowing upon the plaintiff, where it had never been before. (Wood's Law of Nuisance, §§ 378, 393, 397,

399, and p. 404; *Bellows* v. *Sackett*, 15 Barb., 101, 102; *Moran* v. *McClearns*, 63 id., 185, 196; *Roch. White Lead Works* v. *City of Rochester*, 3 N. Y., 463; *Foot* v. *Bronson*, 4 Lans., 47, 50, 51, 52; *Waffle* v. *N. Y. C. R. R. Co.*, 58 Barb., 413, 422, 423; 10 Alb. L. Jour., 401, 403; *Kauffman* v. *Greesman*, 26 Penn., 407, 409, 414, 415; *Martin* v. *Riddle* [note to above], id., 416; *Miller* v. *Lubach*, 47 id., 154, 155.) The defendant as a municipal corporation has no greater exemption from liability than a private person. (*Moran* v. *McClearns*, 63 Barb., 196; *Rochester White Lead Works* v. *City of Rochester*, 3 N. Y., 463, 465.) The defendant in this case was also guilty of negligence and unskillfulness in the construction of its streets and gutters, and is liable for *negligence*, and for the failure to exercise *proper skill* in the construction of the same. (*Clemence* v. *City of Auburn*, 4 Hun, 386, 388; *Conrad* v. *Trustees, etc., Ithaca*, 16 N. Y., 158, 171, 172, 173; *Barton* v. *City of Syracuse*, 37 Barb., 292, 295; *McCarthy* v. *City of Syracuse*, 46 N. Y., 194, 196; 10 Alb. Law Jour., 403.)

E. DARWIN SMITH, J.:

In the charter of the city of Syracuse, the mayor and common council of the said city are made and constituted commissioners of highways, and are empowered " to lay out, make, open, regulate, repair and improve highways, streets, lanes, alleys, bridges, public grounds, sidewalks, and alter, widen, straighten and discontinue the same when they shall deem proper, subject to the provisions of law."

The common council of said city had undoubted power to provide for the opening, grading and improving of University avenue, and the adoption of an ordinance for this purpose was a legitimate exercise of its legislative discretion and powers.

No right of action can arise out of such ordinances, unless the council exceeded their powers, or the agents of the city intrusted with the duty of carrying them into effect were guilty of some misconduct, negligence or unskillfulness.

The power to fix the grade of streets and avenues, and prescribing the manner of improving them, in cities, includes, necessarily, the power to change the surface of the ground, to raise it when it is lower than the proposed grade, and cut it down where it is

higher, and thus effect and change, more or less, the natural flow of the surplus drainage of the land affected. It is well settled that this consequence, though it may cause some apparent injury to adjacent property owners upon the street improved, gives no right of action, but is simply " *damnum absque injuria ;* " and that no one had such an interest in mere surface water as to interfere with the public convenience and welfare in this connection. ( *Wilson* v. *Mayor of N. Y.*, 1 Den., 597 ; *Mills* v. *City of Brooklyn*, 32 N. Y., 496 ; *Flagg* v. *City of Worcester*, 13 Gray, 601 ; *Kavanagh* v. *City of Brooklyn*, 38 Barb., 234 ; Dillon on Munic. Corp., §§ 782, 783.) But while no one has any interest in the ordinary flow of surface water, arising from rains and melting snow, which will sustain an action for its diversion, yet it becomes a very different question whether the collection of such surface water into a single channel, and casting it in a large volume upon an adjacent owner, may not give a ground of action.

In submitting the case to the jury, the learned Circuit judge said to them, that " if the evidence led them to believe there was an interference with the natural course of the water, and interference with the surface water, so as to cast unusual quantities of it upon the land of the plaintiff; if they were satisfied, in the next place, that the defendant authorized these acts, authorized this interference, then it is liable, because it entered upon that very act which produced it."

The judge further charged, in response to a request of the defendant's counsel, " that there must have been negligence in the construction, in the making of the gutter, or the making of the street, in the way the work was done, to entitle the plaintiff to recover."

The counsel for the plaintiff also excepted to what the judge had said in his charge, " that when the city set about doing this work, they must see to it that they do not interfere with the rights of adjoining owners." The judge said, in response, that " that is to be done with the precipitation of surface water." The exception to the charge upon this branch of it is, in substance, an exception upon the single question submitted to the jury in respect to the unusual flow of water cast upon plaintiff's land.

It appears, in the evidence in this cause, that in the improve-

ment of University avenue, in connection with other streets crossing the same, the surface drainage of about thirty-two acres of land, which previously had flowed off to the low lands in no particular channel, was diverted and collected into said avenue, and flowed off, in and over the same, with a descent quite rapid, from the high land above at the head of the street, for much of the distance through said street, till it finally ran over the sidewalks of the same in a large volume on to the plaintiff's land, causing him much injury. I cannot think the plaintiff is bound to submit to such injury, and has no redress for the damage sustained.

As between two owners of adjacent lands, one could not construct ditches or drains on his own land, thereby collecting the surface water over a large territory, and cause such water to flow in a single chanɴᴇʟ upon the adjoining owner, without responsibility for the damages thereby occasioned. This was so held in this department in *Foot* v. *Bronson* (4 Lans., 47); and also in *Dickinson* v. *City of Worcester* (7 Allen, 22); *Livingston* v. *McDonald* (21 Iowa, 160); *Bents* v. *Armstrong* (8 Watts & Ser., 40). The case of *Mills* v. *The City of Brooklyn* decided nothing in conflict with this view. It decides nothing more than that an action cannot be maintained against a municipal corporation, for its omissions to legislate upon a subject within its power. It was there held that such action could not be maintained against such corporation for not providing sufficient sewerage for every or any part of the city. The same omission to construct a sewer adjacent to plaintiff's lot to carry off the surface water that collected thereon, together with a complaint that the defendant had raised the grade of the street adjacent to her premises, were the grounds of action set up in the case of *Wilson* v. *The Mayor of New York* (1 Den., 596); and, also, in *Kavanagh* v. *The City of Brooklyn* (*supra*), the city had raised the grade of a street adjacent to the plaintiff's house, leaving the house below the grade of the street, where it had been erected upon a lower grade previously fixed.

The mayor and common councilmen of the defendant are simply commissioners of highways with enlarged powers. In determining to make any city improvement, in opening, grading or paving streets, laying curbs or gutter-stones, sidewalks, etc., they act under the authority of their charter, and exercise a large discretion. For

their acts the city is responsible, precisely as the highway commissioners of towns are responsible for their acts and neglects. The corporation is liable for the positive misfeasance, and for the negligence of its officers, public agents and servants, or persons acting under its authority, while particular officers, doubtless, in most cases, would be exempt from any personal responsibility. It is in respect to this class of acts and duties, and this immunity on the part of the individual aldermen of a city or trustee of a village who may vote for resolutions or ordinances, directing or authorizing public improvements, that judges sometimes speak of the acts and duties as judicial, and deny responsibility on that ground. In *Mills* v. *Brooklyn* (*supra*), Judge DENIO well said such duties were not judicial, for it did not concern the administration of justice, but did say that it was of a judicial nature because it required the same qualities of judgment and deliberation. I think, with more accuracy and precision, it might be said that such duties were of a legislative character, involving the exercise of discretion and judgment, and a regard to many governmental or prudential considerations. The duties of all public officers involve and require, more or less, the exercise of discretion and judgment. It is a confounding of terms to call the exercise of discretion and judgment in such case judicial.

If a municipal corporation directs, by vote, resolution or ordinance, an illegal act or thing to be done, the party who proceeds to do the unlawful thing will, ordinarily, be a trespasser, and the corporation responsible for his acts. So if the administrative officer of a municipal corporation is guilty of negligence in the discharge of duties intrusted to him, the corporation will be liable for his neglects. (Dillon on Munic. Corp., § 789.) In this view, the defendant was properly held, at the Circuit, responsible for the neglect of its officer, in omitting to remove the large accumulation of filth from the street and gutter where it had been deposited by the water flowing down University avenue and overflowing the sidewalks, if its superintendent of streets or other officers had knowledge of such accumulation and failed to act with proper dispatch. It is upon this ground that this same city was held responsible for the neglect of its officers to properly construct and keep in repair its sewers in *Barton* v. *Syracuse* (37 Barb., 293), and in

*McCarthy* v. *Syracuse* (46 N. Y., 194); and for the unskillful and
negligent construction of a sewer the city of Rochester was held
responsible for the damages resulting therefrom in the *Rochester
White Lead Co.* v. *City of Rochester* (3 N. Y., 464); and for
unskillfulness and negligence in the construction of a sidewalk
the city of Auburn was held liable in *Clemence* v. *Auburn* (11
S. C. N. Y. [4 Hun], 386).

Upon both grounds upon which the cause was given to the jury
I think the charge was substantially correct, and the exceptions
thereto not well taken, and that the judgment should be affirmed.

Present — MULLIN, P. J., SMITH and TALCOTT, JJ.

Judgment affirmed.